IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**SANDRA D. BRUEN**                                                                      **PLAINTIFF**

**V.**                                     **CIVIL ACTION NO. 1:20CV278 LGI**

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY**                     **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Sandra D. Bruen appeals the final decision denying her application for a period of disability and Disability Insurance Benefits (DIB). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge ("ALJ"). Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the Court affirms the ALJ's decision.

In May 2018, Plaintiff filed a disability application alleging an onset date of May 1, 2013, due to fibromyalgia, back injury and depression. Plaintiff was 45 years old on her alleged onset date, with a high school education and no past relevant work. Following agency denials of her application, an ALJ rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

The evidence is detailed in the memorandum briefs and in the ALJ's decision, and thus, will not be repeated in depth here. At her administrative hearing in 2019, Plaintiff testified that her physical and mental impairments during the relevant time period

prevented her from performing any work activity. As noted by the ALJ, she specifically cited persistent knee and back pain despite surgeries in 2011, 2012, and 2017, as well as fibromyalgia, nerve pain and depression. She has used a scooter and other assistive devices since 2017 and estimates that she could walk approximately 100-200 yards without them. Though the pain is constant, Plaintiff testified that it is alleviated somewhat with pain medication and other remedies. She is classified as obese, and records show that she was advised to lose weight before undergoing a scheduled knee replacement in July 2019. In addition to her physical impairments, Plaintiff testified that she has difficulties with memory and getting along with others, advising that she was once fired for fighting on the job. She no longer drives or does household chores, but she is able to attend to her personal hygiene with some assistance from her husband, while spending most of her days reading and watching Netflix.

At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period—from her alleged onset date of May 1, 2013, through her date last insured of March 31, 2018. At steps two and three, the ALJ found that although Plaintiff's degenerative disc disease of the lumbar spine; osteoarthritis of the bilateral knees; morbid obesity; depression and anxiety were severe, they did not meet or medically equal any listing. At steps four and five, the ALJ

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

found that, through the date last insured, Plaintiff had no past relevant work, but she did have the residual functional capacity to perform a reduced range of sedentary work with the following limitations:

> She cannot climb ladders, ropes, or scaffolds. She can rarely climb ramps/stairs. She can occasionally balance and stoop. She can rarely crouch, kneel, and crawl. She may use an assistive device or scooter for uneven terrain or long distances, based on her own judgment/discretion. She is further limited to occasional interaction with supervisors, coworkers, and the general public.

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she could have performed work through the date last insured, as a surveillance system monitor, escort vehicle driver, and semi-conductor assembler.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal quotation marks and citation omitted). It must be more than a scintilla, but it need not be a preponderance. *Id.* In reviewing an appeal, this Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the

ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). As the United States Supreme Court recently reiterated:

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek*, 139 S. Ct. at 1154 (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). This Court may not re-weigh the evidence, try the case *de novo,* or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling*, 36 F.3d at 434.

## Discussion

Plaintiff assigns two errors on appeal. She argues that the ALJ erred in finding her nurse practitioner's opinions were unpersuasive, and in failing to resolve a conflict between the Dictionary of Occupational Titles and the vocational expert's testimony at the fifth step of the sequential evaluation. The Commissioner counters that the proper

standards were applied, and substantial evidence supports the ALJ's decision.  Given the evidence of record, the Court finds no basis for reversal or remand.

1.

As her first point of error, Plaintiff contends that substantial evidence does not support the ALJ's reasoning for finding her nurse practitioner's opinion unpersuasive. Social Security regulations have been revised in recent years so that no specific evidentiary weight, including controlling weight, is to be given to medical opinions from treating sources.  20 C.F.R. § 404.1520(c) (2019).   Under the new regulations, supportability and consistency of medical opinions are the most important factors, and ALJs may, but are no longer required to, explain how they considered other factors. § 404.1520c (2019).  With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be."  § 404.1520c(c)(2).  An ALJ remains free, upon a showing of good cause, to assign little or no weight to the opinion of any medical source when the source's statements are brief and conclusory, are not supported by medically acceptable clinical laboratory diagnostic techniques or are otherwise unsupported by the evidence.  *Holifield*

*v. Astrue*, 402 F. App'x 24, 26 (5th Cir. 2010) (citations omitted).  "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [but when] these so-called reports 'are unaccompanied by thorough written reports, their reliability is suspect.'" *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (citation omitted).

In February 2019, Plaintiff's nurse practitioner submitted such a form opining that Plaintiff's "pain and generalized weakness" caused by her fibromyalgia and diabetes would preclude her from engaging in any form of gainful employment and would cause her to miss more than two workdays per month.  The ALJ found the opinion unpersuasive because it was not consistent with or supported by the overall evidence of record, including the nurse practitioner's own records.  The ALJ also found the assessment to be inconsistent with a Disabled Parking Application the nurse practitioner signed indicating that Plaintiff's "disability should not extend beyond" six months.

Plaintiff's contention that the ALJ's erred in assessing the nurse practitioner's opinion is unavailing.  In evaluating the evidence, the ALJ made the following pertinent observations:

> Treatment records through the date last insured document some abnormal findings on physical exam, such as left knee tenderness and decreased range of motion; low back tenderness to palpation; limited spinal flexion and extension; pain with left straight leg raise, and antalgic gait. However, overall physical exam findings are largely within normal limits prior to the date last insured, with normal strength and full range of motion in all joints. In addition, medical records show the claimant's pain improved with medication and treatment. For example, in October 2017, she admitted her back pain is "somewhat relieved with hot showers and moist heat."  In June 2018, she admitted "over 50% pain relief for several weeks" with facet injections. In July 2018, she reported "> 50% relief from diagnostic nerve

>blocks." In August 2018, she reported her pain is decreased with "hot baths and Norco 7.5 mg daily when necessary." In October 2018, she reported her pain is alleviated with medications.

Additionally, the ALJ noted that the records indicated that Plaintiff was using assistive devices to help with mobility after back surgery in November 2017, even though the "records reveal[ed] no evidence of post-surgical complications." Indeed, post-operative follow-up visits and imaging studies in 2018 revealed she was "doing well from a neurosurgical standpoint" and had no misalignment. She had experienced "significant weight loss" and was exhibiting normal strength and sensation in her bilateral extremities in her physical examinations. Plaintiff has not cited any contrary evidence from her nurse practitioner or any other provider on appeal.

     Plaintiff maintains though that the ALJ should not have considered the Disabled Parking Application in his analysis because such applications "generally require renewal, and the Claimant is in constant contact with [her nurse practitioner's] office for these opinions to be updated." The evidence was not immaterial, however. Though the application post-dates the date of last insured, the ALJ was entitled to consider the fact that Plaintiff's nurse practitioner indicated that she would only need the placard for six months, while ostensibly contending that her limitations were so severe that she could not engage in any form of gainful employment. Moreover, the fact that Plaintiff's placard might be renewed does not establish that she had an inability to perform sedentary work during the relevant time period. *See, e.g., Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) ("[O]rdering of a disability placard adds nothing to a finding of disability here because there is no evidence that the two have substantially similar requirements . . .").

Regardless, the ALJ considered the placard application in the context of the record as a whole. Substantial evidence supports his finding that the nurse practitioner's assessment was not persuasive because it was not consistent with or supported by the overall evidence of record.

### 2.

As her second point of error, Plaintiff contends that the ALJ violated Social Security Policy Interpretation Ruling ("SSR") 00-4p by failing to resolve what she perceives is a conflict between the Dictionary of Occupational Titles and the vocational expert's testimony, *i.e.*, that she could use an assistive device or scooter while performing the jobs identified at step five. *Pol'y Interpretation Ruling : Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P (S.S.A. Dec. 4, 2000), Appendix C - Components of the Definition Trailer, 1991 WL 688702; 20 C.F.R. § 404.1566(d). SSR 00-4p places an affirmative duty on ALJs to identify and obtain explanations for possible conflicts between the vocational expert testimony and the DOT at the administrative hearing, and to explain how any identified conflicts were resolved in their written decision. *See Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (holding under SSR 00-4P that an ALJ must inquire into "any possible conflict" between the VE conclusions and DOT).

Plaintiff is correct that the ALJ erred in failing to make an on-the-record inquiry pursuant to SSR 00-4p at the administrative hearing here, but procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the

existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In other words, the error is harmless unless there was actually a conflict. Notably, Plaintiff fails to explain precisely why the use of an assistive device or scooter would conflict with the duties of a surveillance system monitor or escort vehicle driver, two of the three sedentary jobs identified by the vocational expert. "The purported conflict is not direct or obvious. . .", *Bailey v. Saul*, 853 F. App'x 934, 937 (5th Cir. 2021), and as the ALJ notes in his written decision, the DOT is silent in this regard.

It is well-settled that the Commissioner may take administrative notice of reliable job information available from the DOT at the fifth step of the sequential evaluation, but the ALJ is not bound by the DOT. The Fifth Circuit has long "recognized that the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (internal citations omitted). Unlike the DOT, which gives only general descriptions of job duties, a "vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion as to whether the claimant can perform the specific job." *Fields v. Bowen*, 805 F.2d 1168, 1170–71 (5th Cir. 1986), *holding modified by Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000). "Vocational experts have specialized knowledge and testify "about working conditions and physical demands of various jobs; . . . the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs." *Biestek*, 139 S. Ct. at

1152. *Dell v. Saul*, 807 F. App'x 385, 386 (5th Cir. 2020). In *Carey*, the Fifth Circuit explained that:

> [W]e agree with the majority of circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. . . [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. . . . Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is *per se* controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Carey*, 230 F.3d at 146–47. Thus, even if the vocational expert's testimony differs from the DOT, the testimony constitutes substantial evidence upon which the ALJ can rely to satisfy the Commissioner's burden at the fifth step of the sequential evaluation. *Id.*

Further, an ALJ may rely on a vocational expert's testimony if the hypothetical question reasonably incorporates all of the claimant's disabilities that were recognized by the ALJ, and "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions. . . ." *Bowling*, 36 F.3d at 436. In this case, the ALJ presented a hypothetical that contained all the limitations that were supported by the record. In response, the vocational expert testified that a claimant with these limitations could perform the jobs identified, even with the use of an assistive device or scooter. Plaintiff's representative did not question the vocational expert about a DOT conflict at the administrative hearing, and she has made no attempt to show that one exists on appeal. *Graves*, 837 F.3d at 593. Procedural error notwithstanding, the ALJ

was entitled to rely on the vocational expert's unchallenged testimony that, *inter alia*, Plaintiff can monitor a surveillance system while using a scooter or other assistive device.

## Conclusion

IT IS THEREFORE ORDERED AND ADJUDGED that the Commissioner's Motion to Affirm is granted and Plaintiff's appeal is dismissed with prejudice. A Final Judgment in favor of the Commissioner shall be entered.

SO ORDERED on February 14, 2022.

                                                 s/ LaKeysha Greer Isaac
                                                 UNITED STATES MAGISTRATE JUDGE